THE KING *vs.* MANU.

ON APPEAL FROM THE INTERMEDIARY COURT OF OAHU ON POINTS OF LAW.

TURKEYS WHOSE REMOTE PARENTS were brought to this Kingdom, running wild on the land of G. S., not being in his custody, control or possession, are not the subjects of larceny.

Opinion of the Court by JUDD, J.

The defendant was found guilty of larceny in the Police Court of Honolulu, from which he appealed to the Intermediary Court, where the judgment was affirmed *pro forma*, and an appeal taken to this Court in Banco.

The essential facts are as follows: On the mountain range

of this island, back of Waialua, called the Waianae Mountains, are numbers of turkeys. These birds were brought to this country so long ago that there is no remembrance existing as to the exact time when or by whom they were imported. These birds are now in a wild state, afraid of man, breeding in the unfrequented parts of the mountain and bush country and have been hunted down and caught by devices, precisely as if they were *feræ naturæ*. They are not penned or fed, marked by the land owner, nor does he exercise any actual control over them except as he may be able to catch them and reduce them to his possession.

It is well known that the domestic turkey is descended from the wild turkey, first found in America, modified by breeding and the care of man, and this perhaps accounts for the tendency to revert to the wild state which is so strongly manifested in them. These turkeys, although "wild," are not properly speaking "wild animals." Where the phrase "wild animals" is used, the word "wild" is used as a generic term to indicate that they are of a species not usually domesticated, and does not refer to their comparative docility or familiarity with man. We consider that these turkeys are not properly speaking animals *feræ naturæ*, though partaking of their habits.

The land on which the defendant is alleged to have taken the turkeys in question is the land of "Mokuleia," in Waialua, the property of the prosecuting witness Gaspar Silva, who claims the ownership of the turkeys by virtue of their being on his land and of value to him.

The question before us is whether the taking of the turkeys by the defendant under these circumstances is larceny.

Our statute defines larceny to be the "feloniously taking anything of marketable, saleable, assignable or available value belonging to another or being the property of another." Penal Code, Chapter 16, Section 1. Other sections of this chapter are as follows:

"Section 5. In order to be the subject of larceny, a thing must be the subject of property and possession.

"Sec. 6. Domestic animals of value are the subjects of larceny, though not at the time within the actual keeping or control of the owner, or of any one for him. For instance, estrays and cattle ranging the commons or mountains of the Islands.

"Sec. 7. Animals, whether those living in air, or aquatic, or amphibious, of species not usually domesticated, are subjects of larceny when in the custody, possession and control of the owner, or of any one for him, and are distinguishable as being, or known by the taker to be, so in the owner's possession, custody or control. For instance, fish in ponds, or particular creeks, or portions of the sea, doves in a dove cote.

"Sec. 11. In order to be the subject of larceny, a thing must be owned by, or be the property, general or special, of or belonging to some one. That is, some one must have a property, general or special, in the thing; or have and be entitled to the possession of the thing."

The above quoted statutes do not materially vary from the common law on the subject.

Are turkeys in the condition and situation of these turkeys the property of the owner of the land on which they range?

Section 6 of our statute does not apply. This section refers to domestic animals which have gone astray from the keeping of their owners, and in some cases their whereabouts not exactly known, and also to domestic animals ranging the commons or mountains, presumably with the knowledge of their owners; but these are animals with a known ownership, and capable of identification, but which are for the time being out of the keeping and control of their owners, whereas the claim of ownership for the turkeys in question is founded solely upon the fact of their being at the time of the taking upon the land of another not the taker.

Now, to say that these turkeys are A's solely because they are on A's land, would lead to the absurdity that they would become B's when they went on B's land.

Suppose on a certain night A goes into the woods on his own land and ensnares part of a flock of the so-called "wild turkeys," and the rest of the flock, being disturbed, cross over the boundary to the land of B, and the next night A ensnares them on B's land. On the theory advanced that the place of capture determines the ownership, the latter taking would be larceny.

The case of Davis vs. Green, 2 Haw. Rep., 567, is instructive on this point. This Court there held that the fact that the wild cattle of the mountains of Hawaii were taken on one's land afforded no presumption that they were the property of the land owner.

In this case before us, if the owner of the land where the alleged taking of the turkeys took place was able to trace them, as the undisputed descendants of birds owned by him or his grantors, he would thus show title to them. So far from this being the evidence in this case, it is more than probable that these turkeys are not the descendants of a parent stock introduced on this land by one person, but that these birds have received accessions at different times from the tame turkeys of many different individuals.

In the absence, therefore, of proof of ownership of these turkeys, by the prosecuting witness, aside from the fact that they were caught on his land, and it being proved that they cannot be distinguished from any other turkeys on contiguous lands, they are not the subjects of larceny.

The Legislature of this Kingdom has apparently taken the same view of the domestic animals which are running wild on the Islands, for they have deemed it necessary to enact that all "cattle, horses, mules, donkeys, sheep, goats and swine, over twelve months of age, not marked or branded according to law, and which may have been running wild or at large for six months or over, upon any of the land of this Kingdom, shall belong to and be the property of the owners or lessees of the lands on which the said animals may be found running.'

Chapter 27, Laws of 1878. This Act makes these enumerated animals, in the described circumstances, property, and therefore the subjects of larceny.

It is said that unless the Court holds that the act complained of is larceny, land owners will be liable to unwarranted intrusions and spoliations. We cannot hold to be larceny what is clearly not larceny.

If the civil action of trespass should not be found to be sufficient for the protection of land owners in this respect, no doubt the Legislature will provide further remedies.

Judgment reversed and prisoner discharged.

Preston and Hartwell for the Crown.

J. M. Davidson for defendant.

Honolulu, April 22, 1881.