MICHIGAN SPORTSERVICE, INC., *v.* COMMISSIONER OF
DEPARTMENT OF REVENUE.
TURF SERVICE, INC., *v.* SAME.

1. STATUTES—RULES AND REGULATIONS.
   The provisions of a rule promulgated by an administrative agency pursuant to statute creating the agency must be construed in connection with the statute itself and in case of conflict the latter governs as it is not within the power of such agency to extend the scope of the statute.

2. TAXATION—SALES TAX—EXEMPTIONS—RULES AND REGULATIONS OF DEPARTMENT OF REVENUE.
   The rules and regulations of the department of revenue may not grant exemptions from the general sales tax act not authorized by the legislature (Act No. 167, Pub. Acts 1933, as amended).

3. SAME—SALES TAX—COMMERCIAL ADVERTISING—EXEMPTIONS—PROGRAMS, SCORE CARDS AND RACING FORMS.
   Sales of programs, score cards and racing forms in the usual course of business by concessionaires to patrons of games, sport-

ing events and race tracks, distributed on a commission basis and upon some of which matter there was advertising that was not upon the special order of those to whom sales were made *held*, not commercial advertising exempted from the general sales tax (Act No. 167, § 1[c], Pub. Acts 1933, as amended; Department of Revenue, Commercial Advertising Rule No. 19).

4. COSTS—CONSTRUCTION OF STATUTE.

No costs are allowed in action in which it was determined that certain programs, score cards and racing forms were not exempt from the general sales tax by reason of being commercial advertising (Act No. 167, § 1[c], Pub. Acts 1933, as amended; Department of Revenue, Commercial Advertising Rule No. 19).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 9, 1947. (Docket No. 37, Calendar No. 43,767.) Decided January 5, 1948.

Actions by Michigan Sportservice, Inc., and Turf Service, Inc., Michigan corporations, against Louis M. Nims, individually and as Commissioner of the Department of Revenue of the State of Michigan to recover money paid under protest. Cases consolidated. Judgments for plaintiffs. Defendant appeals. Reversed.

*Dennis Boyle,* for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *Daniel J. O'Hara,* Assistant Attorneys General, for defendant.

CARR, J. These cases were consolidated for trial in the circuit court and the appeals have been submitted together on the record made. Plaintiffs seek to recover payments of assessments levied against them under the provisions of the Michigan sales

tax act.* The payments were made under protest and the suits to recover are based on section 22 of the act (Comp. Laws Supp. 1940, § 3663–22 [Stat. Ann. § 7.543]), which grants specific authority therefor. *Metzen* v. *Department of Revenue,* 310 Mich. 622.

During the years 1941, 1942, 1943 and 1944, the plaintiff, Michigan Sportservice, Inc., had concessions at Briggs Stadium where the home games of the Detroit Baseball Club were regularly played, and at the Olympia, at which place hockey games, basketball games, and similar sports were held. As the concessionaire at Briggs Stadium, plaintiff sold, among other articles, score cards containing the names of the players, their respective positions and other matters of interest to patrons of the games, the price of each such score card being 10 cents. Each card had printed on it certain advertising matter, solicited from parties selling merchandise or services, for the carrying of which the advertisers paid plaintiff.

Plaintiff's business at the Olympia was conducted in like manner. A so-called revue, or program, was customarily prepared and sold by plaintiff to patrons, on which program there appeared information with reference to the particular contest that was being held, the participants, and other matters intended to be of interest to patrons. These programs also carried advertising matter similar in character to that printed on the baseball score cards. They were sold to purchasers for 15 cents per copy.

During certain months of the year 1944, the other plaintiff, Turf Service, Inc., had a concession at the race track maintained on the State fair grounds, and

---

* Act No. 167, Pub. Acts 1933, as amended (Comp. Laws Supp. 1940, 1945, § 3663–1 *et seq.* [Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 7.521 *et seq.*]).

as a part of its business sold cards, or folders, giving the official entries in the various races to be held on the day for which each such folder was prepared, together with other data presumably of interest to parties patronizing the races. This card contained no advertisements of the character above referred to, printed on the programs or folders sold by the other plaintiff at its concessions. The so-called racing forms or cards were sold for 10 cents each. Both plaintiffs, in connection with their respective concessions, also sold candy, cigarettes, soft drinks, and other articles of like character. The tax on the sales of such articles was duly assessed and collected. Plaintiffs raise no question as to their liability therefor. It appears, however, that neither plaintiff was assessed on account of the sales of the programs, score cards or racing forms, above discussed, until January, 1945, at which time the State department of revenue notified the plaintiff, Michigan Sportservice, Inc., of an additional assessment against it for the years referred to, because of the sale of programs and score cards by it, in the sum of $5,915.23; and the other plaintiff was at the same time notified of an assessment against it, based on the sales of the racing forms, or cards, during a part of 1944, in the sum of $1,673.23. As before stated the amounts in question were paid under protest and each plaintiff brought suit to recover. Following trial in the circuit court judgments were entered for plaintiffs, and defendant has appealed.

During the periods in which the sales in question were made the first section of the sales tax act, hereinbefore cited, provided in subdivision (c) that:

"The term 'sale at retail' shall not include tangible personal property, commonly known as com-

mercial advertising when produced upon special order of the purchaser.''

In accordance with authority specifically granted to it in the act the department of revenue has adopted certain rules and regulations. Among regulations so adopted Rule No. 19, appearing in the record as exhibit 10, reads in part as follows:

" 'Commercial advertising' is defined for the purpose of this rule as wording, lettering, designs, pictures, scenes, or combinations thereof, produced upon special order of the purchaser by printing, lithographing, commercial photography, commercial art or other similar process and used solely to promote, aid or influence the sale or use of certain tangible personal property or commercial service, or the patronage of a certain place or places of business. Sales of 'commercial advertising' as thus defined are not taxable.

"Signs, posters, billboard posters, placards, dodgers, handbills, direct mail advertising, pamphlets, folders, blazers, bulletins, catalogs, house organs, newspapers, magazines, price lists, menus and advertising records for radio broadcasts are deemed to be 'commercial advertising' and such sales are not taxable.

"Sales of tangible personal property used for political advertising are taxable. Signs or other advertising prepared on special order which advertise the name, nature or policies of a place of business, or which describe or enumerate the kind or price of property or services offered for sale or availability are deemed to be 'commercial advertising' and are not taxable at sale, but signs giving general notice of caution, direction, et cetera, are subject to tax.

"Magazines and house organs published by or for persons regularly engaged in operating a business which carry sales promotion news or advertising of such business are not taxable.

"The sale of tickets and coupons which are redeemable for admission, price, milk, ice and other purposes, also complimentaries, announcements, invitations, programs, greeting cards, et cetera, are not deemed to be 'commercial advertising' and are taxable, regardless of the fact that they may contain advertising since such items have a certain usefulness apart from the advertising thereon." [*]

Plaintiffs contend that the sales on which the assessments in controversy were based were exempt from taxation on the ground that the subject matter thereof was commercial advertising within the meaning of the provisions of the statute and of the rule, above quoted. The provisions of the rule must, of course, be construed in connection with the statute itself. In case of conflict, the latter governs. It is not within the power of the department of revenue to extend the scope of the act. *Acorn Iron Works, Inc.,* v. *State Board of Tax Administration,* 295 Mich. 143 (139 A. L. R. 368). For equally cogent reasons the rules and regulations of the department may not grant exemptions not authorized by the legislature.

It will be noted that the language of the statute, above quoted, exempts from taxation the sale of commercial advertising when such advertising is "produced upon special order of the purchaser." Referring to this language the trial court interpreted it as having reference to "the special order of the person or organization whose merchandise or business is being promoted or advertised." The court further concluded from the proofs that the operators of the Olympia, the Briggs Stadium, and of the race track were the parties respectively profiting by the sale and distribution of the programs, score cards and racing forms, and further

---

[*] See Administrative Code 1944, p. 1325.—REPORTER.

indicated in the opinion filed that the plaintiffs were distributing the articles in question on a commission basis. It may be noted in this regard that the record indicates that the operators referred to were naturally interested in the information and statistics appearing on the programs and cards sold by plaintiffs at their concessions, and that plaintiffs endeavored to refrain from placing any matter thereon that was objectionable. The record further indicates that in return for the concessions plaintiffs paid the operators of the different amusement places in question a percentage of the receipts from sales at the respective concessions.

The record before us clearly indicates that the sales which defendant claims were taxable were made by plaintiffs, in the usual course of their respective businesses, to patrons of the amusement places where plaintiffs held the concessions. In the declarations the making of such sales by plaintiffs is specifically alleged. It is doubtless true that the operators of these places profited, first, through receipt of a share of the proceeds of the sales at their respective concessions and, second, because of increased interest on the part of patrons resulting from the distribution of the programs, score cards or racing forms. The fact remains, however, that the sales with which we are concerned were made by plaintiffs to numerous purchasers, and the articles were paid for by the latter. Such purchasers gave no special order or orders for the printing or furnishing of the articles in question. They merely took them and paid for them, exactly as other articles sold by plaintiffs at their concessions, sales of which were admittedly taxable, were purchased. The sales were, therefore, not exempt from taxation by virtue of section 1 (c), or under the provision of the rule, above quoted.

Other questions that have been raised by counsel have been given consideration but are not of such character as to call for discussion. The judgments are reversed and the cases remanded to the trial court with directions to enter judgments for defendant. In view of the nature of the questions involved, no costs are allowed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.