(No. 31782.—

WILLIAM MILLER *et al.,* Appellees, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed March 22, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellant.

HUBER, REIDY & KATZ, of Rock Island, (ISADOR I. KATZ, of counsel,) for appellees. ·

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Department of Revenue made a deficiency assessment against plaintiff taxpayers under the Retailer's Occupation Tax Act in the amount of $2301.12, for the period June 1, 1944, to December 31, 1945. The taxpayers protested and, after hearing, a final deficiency assessment in that sum was entered by the Department on May 20, 1947. The taxpayers filed their complaint under the Administrative Review Act in the circuit court of Rock Island County seeking review of the assessment and, after hearing on the record made before the Department, the circuit court quashed the assessment and reversed the findings of the Department without remandment. The Department of Revenue brings this direct appeal, the revenue being involved.

The record discloses that appellees, the taxpayers, during the period in question operated as copartners in the retail liquor business and in the vending machine business. Their outlets consisted of a chain of five taverns and the Macomb Novelty Company, which latter was chiefly devoted to vending of cigarettes by machines. Returns under the Retailers Occupation Tax Act were submitted by appellees in due form for these enterprises and the tax shown as payable on them has been paid. Thereafter, the Department audited the books and records kept in the operation of these businesses, and it is stipulated that the form of sales records kept was sufficient under the act, but their accuracy is in dispute. The record shows that the appellees operated and controlled their enterprises from a central office in Rockford. Daily receipts from sales made in the various outlets were rung up on cash registers and, at the close of the day's business, the total registered was taken down and reported in writing to the office in Rockford. From these reports the total sales were posted for the various outlets in a sales journal from which were posted the entries in the general ledger which reflected purchases and expenses and summary of sales. The Department audited these records and the field auditor, after being informed of the selling prices of the various items handled and by reference to O.P.A. ceiling prices in effect during the period being audited, computed from the appellees' purchase invoices the amounts which the merchandise purchased would have brought if sold at retail at the given unit prices. From this computation a formula was established showing the percentage markup on each type of mechandise, bottle beer, draft beer, bar whisky, package whisky, wines, gin, etc. This formula, when applied to all purchases shown on the purchase invoices involved, and after due allowance for increase in inventory, showed that the total sales shown in appellees' books and on the returns amounted to approximately $122,000 less than the amount arrived at by the

application of the percentage markup formula to the purchases shown on the purchase invoices. The taxpayers' returns show receipts for the period of $241,491.55, while the amount arrived at by application of the formula was $363,758.79.

At the hearing before the Department's hearing officer, the audit was introduced to support the deficiency assessment of $2301.12 in tax on the difference. The taxpayers introduced the testimony of one William Miller, one of the copartners, and that of one Golden, their accountant, and William Blackwell, an employee who had worked at the various outlets. The substance of Golden's testimony was that the books and records from which the original tax returns were prepared were compiled from the daily cash receipts journal and were correct as computed from the receipts reported. Miller testified that the receipts reported were exact and accurate readings of the cash registers for each day, that the sales made each day were rung up on the cash registers and that all employees were required to deposit in the registers the receipts from all sales; that in the course of the business of selling liquor and beer many sales were made at cost or below because under the conditions then prevailing it was necessary to purchase many types of merchandise for which there was little demand, such as rum, in order to get desirable brands of liquor; that the undesirable brands and types thus forced upon them by suppliers had to be sold below the normal markup and often at cost or below in order sell them; that in the handling of liquor by the drink there was an undetermined amount of wastage and loss due to the giving away of drinks by the employees and considerable loss by theft and failure of employees to put receipts into the cash registers; that in the handling of draft beer, the actual sales were below the Department's projected sales under the formula because of loss in cleaning coils and in spillage and wastage incident to handling; that a considerable

amount of merchandise was never sold but was taken for personal use by the taxpayers themselves and other merchandise was sold to other retailers at cost for resale; that the formula of the Department was based in part on presumed sale of liquor by the drink in three-fourths ounce glasses, whereas most of the sales during the period were made in seven-eighths ounce glasses; that many package sales of liquor and beer were made at prices below those charged for such merchandise by the drink, and thus below the projected price arrived at by the Department's formula; that no segregation of such sales was made in taxpayers' sales records. William Blackwell, one of the taxpayers' managers, testified substantially corroborating this testimony. This testimony was rejected by the hearing officer.

Appellees, taxpayers, also offered to prove by profit and loss statements covering the period in question that some of the outlets operated at a net loss, but this evidence was rejected by the hearing officer. The Department's auditor, one London, testified that after having established the markup formula, he applied it to all merchandise purchased by taxpayers without allowance for shrinkage, spillage or reductions for package or bulk sales or sales to others for resale.

The sole question presented on this appeal is whether the evidence of the taxpayers was sufficient to overcome the *prima facie* case made by the Department of Revenue's proposed assessment.

The appellant, Department of Revenue, contends that the appellees failed to keep books in substantial compliance with the reasonable regulations of the Department, and therefore their evidence is insufficient to overcome the *prima facie* case made by the Department's proposed assessment. It is conceded that the record of daily sales kept by appellees was sufficient, as to form, to meet the requirements of the Department, and that extensive records pertaining to the operations of the business were kept and made avail-

able to the Department's auditor. The contention is that appellees did not provide the Department with an inventory of stock on hand in some of the outlets at the beginning and end of the period of audit and that without such inventories it is impossible to determine how much stock on hand at the beginning of the period was sold during the period.

This contention overlooks the testimony of the Department's own auditor that he used the inventories furnished by the taxpayers, and that in some cases the opening inventories were included as purchases and that in such cases he separated beginning inventories from purchases made during the period. The Department's auditor also testified that such variations were of no considerable consequence. It appears that no contention on this ground was raised before the hearing officer and the record shows no difficulty was encountered by the Department's auditor in establishing his projection of total sales for lack of inventories.

There does not seem to be any considerable merit to the contention regarding inventories in view of the testimony that variations in that regard were inconsequential.

Next, the Department urges that the taxpayers failed to separate their reported sales into categories such as sales of liquor by the drink and by the bottle, beer by bottle and by case, wines, gin, rum and the like. No rule is cited which requires such segregation of sales, and it would seem that to require such segregation of sales in a retail establishment would impose an unnecessary burden upon retailers and invite error in bookkeeping.

The Department also makes the contention that the taxpayers are chargeable with sales where their employees took merchandise, sold it and pocketed the money. No authority is cited for such contention and it seems obvious that such transactions are not within the contemplation of the act. The secrecy attendant upon such unauthorized acts of employees prevents any possible recordation of them.

The criminal acts themselves are clearly outside the scope of any employee's employment and it would be as reasonable to hold the taxpayers responsible for mechandise stolen by burglars as to hold them responsible for merchandise thus embezzled.

The Department also urges that the taxpayers are required to account for sales of undesirable kinds and brands of merchandise arrived at by the application of the Department's formula of markup because they did not segregate such merchandise and record its sale at lower prices. Again, this contention is confronted with the stipulation that the record kept of daily sales was sufficient as to form. The necessities of trade concededly required the taxpayers to accept inferior kinds and brands of merchandise during the period in question because of the common practice of suppliers "tying in" slow moving merchandise with better kinds and brands and thus forcing retailers to accept some less desirable merchandise in order to get the more desirable. The Department does not dispute that retailers reasonably had to mark such merchandise for sale at cost, or at a much lower markup than the more desirable kinds and brands, in order to move it. To apply a formula, based on prices charged for the most saleable merchandise, to these kinds and brands which had little saleability is clearly to ignore the elementary facts of trade.

The proposed deficiency assessment made in this case was *prima facie* correct. (Ill. Rev. Stat. 1949, chap. 120, par. 443; *Lutkus* v. *Department of Finance,* 385 Ill. 221.) The question presented on this appeal reduces itself to whether the taxpayers' evidence in this case is sufficient to overcome the presumptive correctness of the Department's assessment. The taxpayers in this case have adduced evidence showing that all sales made in the course of their business were rung up on their cash registers; that the totals were daily taken from such registers and recorded in the books of the business from which the returns sub-

mitted were prepared. The taxpayers have introduced evidence tending to show that, because of necessary wastage, spillage and shrinkage, not all merchandise purchased was sold; that some merchandise purchased was not sold because of theft and embezzlement by employees; that some was given away in the course of trade and used for personal consumption by the taxpayers themselves; that a considerable amount was sold at cost or at a very small markup in order to sell it at all, and some was sold to other retailers at cost for resale.

In view of the voluminous and extensive records kept by the taxpayers in the course of their business, it cannot be said that their books and records failed to meet the requirements of the act as to form. The evidence produced to support the correctness of their records was fully as worthy of belief as the admittedly artificial result reached by the Department by the application of its formula of markup.

It has been held that, in the absence of any adequate records of the taxpayer, the Department may prepare its audit from the best available other sources. (*Du Page Liquor Store, Inc.* v. *McKibbin*, 383 Ill. 276.) However, in the instant case, the Department prepared its audit upon the taxpayers' records alone, and while accepting those records as correct so far as purchases were concerned, rejected them as to sales receipts. The records here were extensive and covered all necessary steps in bookkeeping. Clearly, the *Du Page Liquor Store case*, in which the only records of the taxpayer were some loose sheets on which what purported to be monthly sales totals were entered, cannot be controlling in the instant case.

In *Novicki* v. *Department of Finance*, 373 Ill. 342, a deficiency assessment was set aside on evidence of the taxpayer there to the effect that the difference between the sales reported by him and the sales computed by the Department from purchases was due to shrinkage, spillage

and waste of beer. Such evidence was held competent and sufficient to overcome the *prima facie* case made by the Department's assessment. It would seem that the taxpayers' evidence in the instant case is sufficient to overcome the *prima facie* case made by the deficiency assessment made here. That being so, the burden shifts to the Department to prove its case by competent evidence. The only evidence of the Department was its auditor's describing the method by which the markup formula was computed. Since that procedure was based solely on the taxpayers' records, which concededly were correct so far as used by the Department, the taxpayers' records as to sales, together with the evidence offered by them explaining the difference between the projected sales and the sales as recorded, was sufficient to justify the lower court in quashing the assessment.

For the reasons above set forth, the judgment of the trial court is affirmed.

*Judgment affirmed.*