James Key and Ellis Holland, Plaintiffs in Error,

*v.*

State of Tennessee, Defendant in Error.

384 S.W.2d 22.

(*Knoxville*, September Term, 1964.)

Opinion filed November 12, 1964.

. FRANCIS W. HEADMAN, Knoxville, for plaintiffs in error.

. GEORGE F. McCANLESS, Attorney General, MARNE MATHERNE, Assistant Attorney General, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The plaintiffs in error, hereinafter referred to as defendants, were convicted of the offense of hunting during the closed season. Each defendant was fined $50.00 and costs by the Trial Judge, who heard the case without the intervention of a jury. Defendants' motions for new trial were overruled by the Trial Judge and they have perfected their appeals to this Court.

Since assignments of error 1 and 2 relate to the evidence, it is necessary briefly to review the facts. The record shows that on the evening of August 9, 1963 State Game & Fish officers went into the Walland and Townsend area of Blount County. When they arrived at the Laurel Lake property, which belongs to the State and is used as a youth camp, they found two trucks parked there with a dog chained in the back of one of the trucks. Officers remained in the vicinity of these trucks all night. While there, they "heard dogs back in towards the mountains, in behind Laurel Lake, barking and running". The next morning between eight and nine o'clock the two de-

fendants and two other men came out of the woods towards the trucks leading dogs. The defendant Key was carrying his fully loaded 30-30 rifle. One of the officers went back up the trail from which the men had come and found another 30-30 rifle, which the defendant Holland admitted was his. When asked what they were hunting, the defendants stated they were hunting feral hogs.

The top of the mountain where the defendants stated they camped during the night, according to the testimony of the defendant Holland, is about two miles from the boundary of the Smoky Mountain National Park. The record shows that Russian boar are found in Smoky Mountain National Park as well as in the Tellico Wildlife Area and that the Russian boar in the National Park "come out of the park quite a bit" in the vicinity where defendants were hunting.

When asked how he could tell the difference between a Russian boar and a feral hog, the defendant Holland testified:

"The general way, most general way, is color. That's one. And generally the Russian hog is either black or brindled colored or gray. Once in a while they will be mixed enough to where there will be some white in them, at Tellico."

This defendant testified a feral hog may be any color. He further stated that a feral hog will:

"just be fat and ugly. * * * He don't have any streamlined form to him at all like a Russian hog does."

This defendant admitted that the tracks made by a Russian boar and those made by a feral hog are the same. He further testified that the bay or bark of the dogs was

the same whether they were pursuing Russian boar or feral hogs. This defendant, in his testimony, contended there is a difference in the rooting habits of Russian boar and feral hogs, that a feral hog will only root in damp, soft earth, but a Russian boar will root in any kind of earth. When asked what a domestic hog would do in a turnip patch, he responded that a turnip patch would be a soft, damp place.

When apprehended on the Laurel Lake State property, the defendants were allowed to remain there sufficient time to recover their dogs, some of which had become lost from them during the night, and were instructed to then report to the proper authorities, which they did.

 The record does not show that the defendants killed any game of any sort on this occasion. "Hunting" is defined by T.C.A. sec. 51-403, as follows:

"Hunting includes pursuing, shooting, killing, capturing, and trapping wild animals, wild fowl, wild birds, and all lesser acts such as disturbing, harrying or worrying, or placing, setting, drawing or using any device used to take wild animals, wild fowl, wild birds, whether they result in taking or not, and includes every act of assistance to any person in taking or attempting to take wild animals, wild fowl, or wild birds."

There can be no doubt defendants were hunting on this occasion. They contend they were hunting feral hogs and that feral hogs are not protected by the laws of this State and that, therefore, they had a legal right to hunt feral hogs at any time and at any place other than in wildlife management areas or on State owned property. They deny they did any hunting on the Laurel Lake State

property, but asserted they were beyond its limits while hunting.

While we, as did the Trial Judge, find it difficult to understand how the defendants could know their dogs were on the trail of a feral hog and not a Russian boar, we will follow the reasoning of the Trial Judge when he stated:

"I suppose if they say they were hunting feral hogs, they were hunting feral hogs, as far as I'm concerned."

This leaves the question of whether or not there was a closed season on feral hogs at the time and place defendants were hunting on this occasion.

By T.C.A. secs. 51-401 and 51-402, "[t]he ownership of and title to all forms of wildlife within the jurisdiction of the state, as are not individual property under the laws of the land, is hereby declared to be in the state" and wildlife is defined "to be all wild animals, wild birds, wild fowl, fish, frogs and other aquatic animal life."

T.C.A. sec. 51-408 provides:

"There is hereby declared a closed season upon all hunting and fishing in the state of Tennessee upon all game and fish protected by the laws of the state."

By T.C.A. sec. 51-409, upon a determination by the State Game & Fish Commission that the supply of game in a given area is adequate to allow the taking thereof without danger of extinction or undue depletion, the Commission is authorized to announce such fact by proclamation, in which the Commission is required to state the species of game which may be taken and announce the dates between which such game may be taken. Upon

such announcement by the Commission, it is made lawful for any person within the area designated by the Commission to take game or fish of the species mentioned by the Commission. Under these statutes the season for hunting all game protected by the laws of the State is closed except as the season on certain species of game may be declared open in a given area at a given time by proclamation of the Game & Fish Commission issued pursuant to T.C.A. sec. 51-409.

The defendants contend that feral hogs are not wildlife or game within the meaning of these statutes. Webster's Unabridged Dictionary, 1950 Edition, defines the word "feral" as follows:

"a. (From L. *ferus,* wild) 1. A term applied to wild animals descended from tame stocks, or to animals having become wild from a state of domestication, or plants from a state of cultivation; as, *feral* pigs. 2. Wild by nature; untamed; savage; ferine; existing in a state of nature."

In this same work, among the definitions of the word "game" are the following:

"Animals which are pursued or killed in the chase or in the sports of the field, either for the use of man, or for pastime; as the northern forests are rich in *game.* * * * Pertaining to such animals and birds as are hunted either for the use of man or for the sport of the hunt."

In 38 C.J.S. Game sec. 1, it is stated:

"The term 'game' is generally defined as birds and beasts of a wild nature obtained by fowling and hunting, and, in the absence of a statutory definition, the

term is to be understood in its ordinary signification, and includes all game birds, game fowl, and game animals; but ordinarily it does not include domesticated animals or birds. Within the meaning of the game laws, however, the term primarily refers to game fit for food, although under some statutes it applies also to animals valuable for their fur or otherwise."

Independent of any statute:

"The wild animals within its borders are, so far as capable of ownership, owned by the state in its sovereign capacity for the common benefit of all of its people. Because of such ownership, and in the exercise of its police power, the state may regulate and control the taking, subsequent use, and property rights that may be acquired therein." *State v. Hall,* 164 Tenn. 548, 551, 51 S.W.2d 851, 852.

See also *State v. Ashman,* 123 Tenn. 654, 657, 135 S.W. 325.

By their very definition, feral hogs are wild animals and not domesticated animals; therefore, both by statute and by the common law, the ownership of the title to feral hogs is in the State.

On the trial of this case, the defendants placed upon the witness stand the Supervisor of the Second Administrative District of the Game & Fish Commission. This District includes Blount County. He testified upon direct examination that eight or ten years ago for one year feral hogs were proclaimed as a nonprotected species, but that since that time and during the summer of 1963 that was not the case.

Further, the defendants introduced in evidence as their Exhibit Number 1, the 1963-64 Small Game Rules & Regu-

lations, regulating the hunting of dove, squirrel, rabbit, grouse, quail, fox, feral hog, raccoon-opossum and water fowl in certain wildlife management areas in the state, which shows that feral hogs may be taken in the Ocoee Wildlife Management Area on squirrel and grouse hunts between sunrise and sunset on certain dates.

The State introduced Proclamation Number 080 of the Tennessee Game & Fish Commission fixing hunting regulations for the 1963-64 season, which shows it was filed on the 10th day of July, 1963 with the County Court Clerk of Blount County, pursuant to T.C.A. sec. 51-409. This exhibit of the State contains the same information with reference to an open season on feral hogs in the Ocoee Wildlife Management Area as that stated above, and further shows that the season on feral hogs was open in the Pickett Wildlife Management Area from November 18th to November 30th. It does not show any open season on feral hogs other than in certain wildlife management areas.

T.C.A. sec. 51-409, as amended, further provides:

"that the game and fish commission shall annually publish a list of such wildlife as are deemed destructive and/or not to be protected by law."

Under this provision of the statute all wildlife in the State, except that of a species so published by the Game & Fish Commission, is wildlife protected by law. The regulations of the Game & Fish Commission introduced in evidence do not list feral hogs as being destructive and/or not to be protected by law. We, therefore, conclude that feral hogs, which by definition are wild, existing in a state of nature, are game protected by the laws of the State.

144

We have read with interest authorities cited in the brief of plaintiffs in error from other jurisdictions, none of which deals with the status of feral hogs. The principal case relied upon by plaintiffs in error is *The King v. Manu*, 4 Hawaii 409 (1881). A copy of the opinion in that case is attached to the brief of plaintiffs in error. The defendant in that case was found guilty of the larceny of certain turkeys which roamed wild. These turkeys were taken by the defendant while on the property of the prosecutor. While the Court in its opinion did state that these turkeys are not properly speaking animals *ferae naturae,* the Court stated:

"These birds are now in a wild state, afraid of man, breeding in the unfrequented parts of the mountain and bush country and have been hunted down and caught by devices, precisely as if they were *ferae naturae.*"

The Court reversed the conviction of the defendant and held that these turkeys were not the property of the owner of the land on which they were roaming when taken and could not be the subject of larceny.

We find that Webster's Unabridged Dictionary, 1950 Edition, defines the phrase *"ferae naturae",* as follows:

"(L. of a wild nature) Wild; not tamed or not tamable; applied in law to animals living in a wild state."

It is unnecessary to review other cases mentioned in the brief of plaintiffs in error. We find none of these cases determinative in arriving at the proper construction of our game and fish laws. The uncontradicted evidence shows the defendants were hunting feral hogs in Blount County on August 10, 1963. The season on feral hogs had not been declared open at that time and place

by proclamation of the Tennessee Game & Fish Commission in conformity with the statute. Feral hogs are wildlife protected by the laws of the State and, both by common law and by the statute, are the property of the State, the hunting of which the State has a right to regulate or prohibit. The Trial Judge was correct in finding the defendants guilty of hunting during the closed season.

Certain assignments of error complain of the action of the Trial Judge in sustaining objections to certain testimony offered by the plaintiffs in error with reference to oral statements allegedly made by employees of the Game & Fish Commission. Under the game and fish statutes, as we construe them, this evidence was irrelevant and immaterial. We find no reversible error in the record. The assignments of error are overruled and the judgment of the Trial Court is affirmed.