(No. 40361.—

Melvin C. Young, Appellant, *vs.* Harry L. Hulman, Director of Revenue, *et al.,* Appellees.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

Horsley, Vespa & Lott, of Springfield, for appellant.

WILLIAM G. CLARK, Attorney General, and JOSEPH A. LONDRIGAN, Special Assistant Attorney General, both of Springfield, (GEORGE W. SCHWANER, JR., Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal by plaintiffs, Mel C. Young individually, and Mel Young Mobile Homes, Inc., and a cross appeal by defendant, Department of Revenue, from a judgment of the circuit court of Sangamon County affirming, after modification, the findings of an administrative hearing officer concerning the amount of retailers' occupation tax owed by plaintiffs. Since the corporate plaintiff assumed all prior obligations of the individual plaintiff's business in December 1962, for purposes of the appeal the plaintiffs will hereinafter be referred to as simply the taxpayer.

Pursuant to an audit of the taxpayer's retail trailer sales covering a three-year period from January 1, 1960 to December 31, 1962, and a notice of proposed assessment in the sum of $15,663.10, including penalties, made by the Department of Revenue in accordance with the Retailers' Occupation Tax Act, the taxpayer requested and obtained a hearing before the Department. In this hearing, the taxpayer claimed some 200 errors had been committed by the Department auditor in connection with the proposed assessment. The hearing officer classified these errors into nine categories based upon the type of sales involved and found that the taxpayer had overcome the Department's *prima facie* case in all but two of these categories; *viz,* category No. 7, "agency sales", and category No. 8, "rental or lease sales", and accordingly reduced the tax liability to $9,478.87 plus 10% penalty or a total tax due of $10,426.76.

The taxpayer then filed an administrative review action in the circuit court of Sangamon County which resulted in the court's sustaining the officer's ruling on every category

except No. 8, "rental or lease sales". That category, the court found, contained certain transactions which were taxed twice, and it therefore reduced the tax assessed on this category by $2,902.43, representing the amount of the excess taxation. This then further reduced the total tax due to $7,524.33 including penalties.

On appeal, the taxpayer argues that it owes no tax or penalties (1) because the audit is so completely defective it cannot sustain any assessment, or (2) if the audit is allowed to stand, it indicates on its face that there is no liability. With reference to this latter alternative, the taxpayer contends that its so-called "agency sales" are not taxable because the monies accrued thereby represent brokerage fees on transactions outside the normal course of business. The taxpayer further contends that the circuit court's finding that some transactions within category No. 8, "rental or lease sales", had been taxed twice relieves it of all tax liability for sales in this category rather than a mere reduction in the tax assessed thereon. The Department's cross appeal seeks to have the findings of the hearing officer reinstated.

We first consider the taxpayer's argument that the entire audit was so defective that no assessment could be based upon it. At the hearing the Department's auditor explained his auditing procedure. He testified that he could not reconcile the amount of sales reported by the taxpayer in its monthly return with its books and records. He then attempted to reconstruct the sales records by determining the number of trailers acquired and sold during the period through beginning and ending inventories, purchase invoices and trade-ins and computing the amount realized by identifying conditional sales contracts, cash invoices, customer accounts and information obtained from the Secretary of State with particular items passing through the taxpayer's inventory. Items that he could not account for in this manner were listed as sold at the trade-in or purchase

price, and where the sales price on the face of the conditional sales contract varied with that in the customer's account ledger or sales invoice ledger, he used the price as shown on the contract. He made no reconciliation between his computations of gross sales and receipts shown in the taxpayer's cash journal. The taxpayer maintains that these procedures fail to show the amounts actually realized on each sale since they do not account for washed out sales, inflated prices on conditional sales contracts, repossessions, resales, refinancings and other factors that are shown in its books and records. The taxpayer further argues that because its books and records accurately reflect the gross sales of its business, an audit based on the documents from which its book entries are made and not upon the books themselves is so intrinsically defective that the audit should be given no credence whatsoever.

We find that the record fails to substantiate this contention. The auditor stated that he went outside the taxpayer's books and records because they failed to support the taxpayer's monthly return. Furthermore, in some instances the taxpayer's method of accounting did not comply with Department Rules and Regulations, specifically paragraph 3 of article 7 (CCH State Tax Reporter, Illinois, Vol. 1, par. 61—007). We think these factors were ample justification for the auditor's decision to proceed outside the taxpayer's books and records and we therefore cannot disregard the audit in its entirety as the taxpayer urges.

When considering the taxpayer's alternative contention relating to the tax liability demonstrated by the audit, we note that the Department of Revenue establishes a *prima facie* case that its assessment is correct by examining and correcting the taxpayer's return. (Ill. Rev. Stat. 1961, chap. 120, par. 443; *Novicki* v. *Department of Finance,* 373 Ill. 342; *Marshall & Huschart Machinery Co.* v. *Department of Revenue,* 18 Ill.2d 496.) "The taxpayer, thus, has the burden of proving by competent evidence that the proposed

assessment is not correct, and when such evidence is not so inconsistent or improbable in itself as to be unworthy of belief, the burden then shifts to the Department which is required to prove its case by competent evidence. [Citations.]" (*Fillichio* v. *Department of Revenue,* 15 Ill.2d 327, 333.) The record discloses that at the instant hearing the taxpayer overcame the Department's *prima facie* case in seven "categories" by showing that its books and records accurately reflected the amount of sales in these "categories". However, with regard to category No. 7, "agency sales", the taxpayer's books and records lacked credibility since they did not comply with Department Rules and Regulations, thereby rendering them incapable of rebutting the *prima facie* case made by the audit. With respect to category No. 8, "rental or lease sales", the taxpayer disputed only the computation of the tax, there being no conflict between the books and the audit as to the amount of sales taxable. Accordingly, the hearing officer ruled that the Department's *prima facie* case was not rebutted as to both "agency" and "rental or lease sales". However, the circuit court, on the basis of both the audit and the taxpayer's books, affirmed the hearing officer's finding of tax liability for the transactions included in the "agency sales" category but reversed his finding as to the tax due on transactions falling into the "rental or lease sales" category, concluding from the record that these type transactions had been taxed twice. It is the propriety of these rulings which we must pass on now.

Necessary to a disposition of these issues is an understanding of the nature of the sales transactions described in categories Nos. 7 and 8. Category No. 7, "agency sales," involved situations where third parties would request the taxpayer to find a buyer for their mobile homes for which service the taxpayer would receive a commission when it sold the trailer. These sales were not segregated in the taxpayer's books and records but were recorded in the regular customer account and listed on sales and cash invoices as

were all other sales. Conditional sales contracts evidenced these to be sales from the taxpayer to the individual purchaser and in most cases the trailers being sold on this basis were located amidst the taxpayer's stock with nothing to indicate the identity of the true owner. Category No. 8, "rental or lease sales", were transactions where a contract for sale at an agreed price and a lease in which the total payments due thereunder equalled the down payment quoted in the sales contract were contemporaneously executed. Upon the expiration of the lease, the then purchaser executed a conditional sales contract. This arrangement served only to enable the purchaser to build up a down payment through the lease and obtain bank financing.

In view of the nature of the transactions categorized under "agency sales", we agree with the hearing officer and the court that these sales were taxable under Rule 5 of the Department Rules and Regulations (CCH State Tax Reporter, Illinois, Vol. 1, par. 60—108) which in pertinent part provides: "Every auctioneer or agent, acting for an unknown or undisclosed principal, * * * entrusted with the possession of such personal property for the purpose of sale, is deemed to be the owner thereof, and upon the sale of such property to a purchaser for use or consumption, he is required to file a return of the receipts from the sale and pay to the Department a tax measured by such receipts. The receipts from any such sale, when made by an auctioneer or agent who is acting for a known or disclosed principal, are taxable to the principal, provided the principal is engaged in the business of selling such tangible personal property at retail * * * (2) For the purposes of the rule, a principal is deemed to be disclosed to a purchaser for use or consumption only when the name and address of such principal is made known to such purchaser at or before the time of the sale or when the name and address of the principal appears on the books and records of the auctioneer or agent. (As revised January, 1954)." Although the taxpayer

claims that it received only a brokerage fee on these sales and therefore did not perform an agency sale taxable under Rule 5, we do not find this claim determinative of the issue here. "As we noted in *Gladstone Cab Co.* v. *Donnelly*, 30 Ill.2d 465, we must look to the substance rather than the form of a transaction, and the categorization given to a relationship by the interested parties is not conclusive of the nature of the relationship." (*Abt* v. *Department of Revenue*, 34 Ill.2d 324, 325.) Looking to the essence of these agency or brokerage sales, we find a retailer of mobile homes selling mobile homes at retail for undisclosed third persons who are not themselves engaged in this business. We are not persuaded that the devices of a brokerage arrangement and a method of recording such transactions to show them as occurring outside the ordinary course of business can change the true nature of these sales and subvert the tax. Ownership is immaterial to the onus of the retailers occupational tax which imposes liability upon the occupation of *selling* at retail and not on the *sale* itself. We, therefore, affirm the hearing officer and the court as to their finding of tax liability for those transactions listed under "agency sales".

Next, with regard to the transactions falling under the "rental or lease sales" category, it is our opinion that the hearing officer correctly characterized each of these transactions as a single sale at retail for use or consumption, the sale price being the agreed price in the sales contract. (See *Illinois Road Equipment Co.* v. *Department of Revenue*, 32 Ill.2d 576.) Moreover, while the taxpayer argues, as it did before the circuit court, that it was taxed twice for the full sales price, first when the sales contract and lease were executed and second when the conditional sales contract was executed at the expiration of the lease, we find that the record substantiates the officer's finding that the taxpayer was assessed only once on the full sales price as stated in the sales contract. At the hearing the Department's auditor

testified he computed the gross amount of these rental or lease sales "[o]n the amount of the contract, on the sales contract." The auditor further stated that "when he [the taxpayer] signed one of these lease rental or lease purchase agreements, that was a purchase then, I did not tax him on the rent as it came in, I taxed him on the selling price of that and that money which had been paid in as rent applied to the purchase price of that, and the man paid the difference."

In reviewing the evidence adduced on this issue, the hearing officer observed that "[t]here was some testimony that tax had been paid by * * * [the taxpayer] during the year 1963, on some of these items. If that can be established the [t]axpayer may be entitled to a claim for credit during the latter period, but since that is not within the period of this audit, it cannot be considered." With this observation we are in accord. We therefore reverse the circuit court on its reduction of the assessment and direct that the finding of the hearing officer be reinstated.

For the reasons stated herein, the judgment of the circuit court of Sangamon County is affirmed in part and reversed in part. We remand the cause to the circuit court directing it to reinstate the order of the hearing officer.

*Affirmed in part and reversed in part and remanded, with directions.*