(No. 43399.—

AUSTIN LIQUOR MART, INC., Appellee, v. DEPART-
MENT OF REVENUE, *et al.,* Appellants.

*Opinion filed January 28, 1972.—Rehearing denied March 28, 1972.*

RYAN, SCHAEFER, and KLUCZYNSKI, JJ., dissenting.

WILLIAM J. SCOTT, Attorney General, of Chicago, (FRANCIS T. CROWE, CALVIN C. CAMPBELL, MORRIS S. BROMBERG, and GERALD T. ROHRER, Assistant Attorneys General, of counsel,) for appellants.

MICHAEL R. FUMO and LAWRENCE JACOBS, of Chicago, for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

At the end of July, 1969, plaintiff, Austin Liquor Mart, Inc., submitted its books and records for the three-year period August 1, 1966, to July 31, 1969, to the Department of Revenue, herein referred to as defendant, for audit and inspection, seeking a release from liability under the Retailers' Occupation Tax Act (Ill.Rev.Stat. 1967, ch. 120, par. 440 *et seq.*) for such period in order to sell one of a chain of retail liquor stores which it owned and operated in Cook County. On August 19, 1969, defendant issued a Notice of Tax Liability in the amount of $15,194.28, which amount was paid by the plaintiff the following day without protest.

On November 24, defendant issued a *subpoena duces tecum* directing plaintiff to produce all of its books and records for the period January 1, 1967, to November 24, 1969, at the defendant's Chicago office on December 1. Plaintiff's attorney appeared on December 1 and filed a motion to quash the subpoena which was taken under advisement by the hearing officer. On December 2 a

second *subpoena duces tecum* issued requiring the production of plaintiff's books and records for the same period at a December 5 hearing and again plaintiff's attorney appeared and moved to quash the subpoena. This motion was also taken under advisement. Both motions to quash were denied on December 8 in a letter designating the subpoenas as first and second demands for books and records. On December 12 certain of plaintiff's officers were arrested, apparently for failure to comply with the *subpoena.*

Also on December 12 plaintiff filed an emergency petition with the circuit court of Cook County seeking a mandatory injunction to prevent further investigation of plaintiff's books and records for the period August 1, 1966, to July 31, 1969, since a final assessment of tax liability for this period had been issued and paid in full.

Defendant filed its answer and counterclaim on January 14, 1970, alleging on information and belief that plaintiff had not delivered all of its books and records for audit and had failed to report the total amount of gross receipts for the period in question. Defendant further alleged that plaintiff did not file annual information returns for this period as required by statute. (Ill.Rev.Stat. 1967, ch.120, par.442.) Defendant requested the court to compel production of plaintiff's books and records for reassessment and to enjoin plaintiff from operating its business because of its failure to file annual information returns. Plaintiff's reply and answer to the counterclaim were filed on March 5 and defendant filed a reply on March 18.

The only evidence introduced at the March 24 trial was a copy of the Notice of Tax Liability and proof of payment in full on the day after its issuance. Defendant sought to call plaintiff's president as an adverse witness (Ill.Rev.Stat. 1967, ch. 110 par. 60; 43 Ill.2d R. 237), but he was not present in the courtroom and the court refused to have him produced as a witness. No other evidence was

submitted. The court held that defendant was estopped from further investigation of plaintiff's books and records for the period in question when it issued the assessment of tax liability for that period and accepted payment. The court also found defendant's counterclaim to be insufficient, holding that a request for injunctive relief cannot be supported by allegations on information and belief.

On March 30, defendant filed a motion for leave to amend its answer and counterclaim alleging that representations previously made on information and belief were in fact based upon its knowledge and possession of plaintiff's Federal income tax returns obtained pursuant to a compact between the Governor of Illinois and the Regional Director of the Internal Revenue Service. The court took the matter under advisement and on May 5 denied defendant's motion, denied as too late a request to make an offer of proof of the evidence which would be submitted were the amendment allowed, and then signed the decree prepared and submitted by plaintiff.

The basic issue presented is whether defendant may be estopped from reexamining plaintiff's books and records for the period in question because of its previous assessment and acceptance of payment for that period.

Plaintiff cites section 443 of the Retailers' Occupation Tax Act (Ill.Rev.Stat. 1969, ch. 120, par. 443) which provides in part: "If a protest to the notice of tax liability and a request for hearing thereon is not filed within 20 days after such notice, such notice of tax liability shall become final without the necessity of a final assessment being issued and shall be deemed to be a final assessment."

Plaintiff contends that a "final assessment" is equally binding on both parties and once the notice of tax liability becomes final and the assessment is paid, defendant is barred from further investigation. We do not agree. It is firmly established that where the public revenues are involved, public policy ordinarily forbids the application of estoppel to the State. *Department of Revenue v.*

*Barding, 33 Ill.2d 235; Skillet Fork River Outlet Union Drainage Dist. v. Central Lumber Co., 31 Ill.2d 312; People v. Chas. Levy Circulating Co., 17 Ill.2d 168; Clare v. Bell, 378 Ill. 128; People v. Women's Athletic Club, 360 Ill. 577;* 1 A.L.R.2d 338.) "It seems to be universally recognized that, generally, a State cannot be estopped by the acts and conduct of its officers or agents in the performance of the governmental function of collecting taxes legally due. \*\*\* *United States v. Globe Indemnity Co., 94 F.2d 576 (C.A. 2); Olson Const. Co. v. State Tax Com., 12 Utah 2d 42, 361 P.2d 1112; Henderson v. Gill, 229 N.C. 313, 49 S.E.2d 754; Michigan Sportservice, Inc. v. Nims, 319 Mich. 561, 30 N.W.2d 281; Claiborne Sales Co. v. Collector of Revenue, 233 La. 1061, 99 So.2d 345; Commonwealth v. Western Md. R.R. Co., 377 Pa. 312, 105 A.2d 336;* 31 C.J.S., Estoppel, sec. 138; 19 Am. Jur., Estoppel, Sec. 166; Bigelow, Estoppel (6th Ed.), p. 372; 1 Cooley Taxation, p. 159. Cf. *Gontrum v. Mayor & City Council of Baltimore, 182 Md. 370, 35 A.2d 128."* (*Comptroller of Treasury v. Atlas General Industries, 234 Md. 77, 198 A.2d 86, 90.*) "The government is not estopped by previous acts or conduct of its agents with reference to the determination of tax liabilities or by failure to collect the tax, nor will the mistakes or misinformation of its officers estop it from collecting the tax. *State Tax Commission v. Johnson, 75 Idaho, 105, 269 P.2d 1080; Fitzpatrick v. State Tax Commission, 15 Utah 2d 29, 386 P.2d 896; Tennessee Trailways, Inc. v. Butler, 215 Tenn. 136, 373 S.W.2d 201; Good Will Industries of Southern Calif. v. Los Angeles Co., 117 Cal.App.2d 19, 254 P.2d 877; Claiborne Sales Co. v. Collector of Revenue, 233 La. 1061, 99 So.2d 345; Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252." State v. Adams, 90 Idaho 195, 409 P.2d 415, 419;* 31 C.J.S., Estoppel, sec. 147.

In view of the strong public policy manifested by the cited cases against estopping the State in matters relating

to the collection of taxes, we cannot, in the absence of compelling language, accept the wording at section 443 as evidencing a legislative intent to bar further investigation by the State when persuaded that such examination is necessary. It seems to us not unlikely that the "final assessment" provision of section 443 was intended to simplify administrative procedure by making an unprotested notice of tax liability the equivalent of a final assessment, as to the taxpayer, for the subsequent collection purposes referred to in other statutory provisions.

Relying upon *Hickey v. Illinois Central R.R. Co., 35 Ill.2d 427,* in which this court recognized that situations may arise which justify invoking the doctrine of estoppel against the State even when acting in its governmental capacity, plaintiff contends that the positive acts of defendant, and plaintiff's detrimental reliance thereon, compel application of estoppel in this case. While it is true that the State has no absolute immunity from the application of equitable principles, our opinion in *Hickey* reaffirms the general rule that the State cannot be estopped in the exercise of its power of taxation or the collection of revenue unless necessary to prevent fraud and injustice.

It was only in the context of the "extraordinary circumstances" present in *Hickey* that we held the State was precluded by basic concepts of right and justice from asserting its claim in that case, and we find no similarly compelling circumstances here.

Our holding that payment by a taxpayer of a prior assessment covering the same period of time is not a bar to subsequent investigation does not, however, leave the taxpayer without protection. Even in areas where the need is as compelling as is the necessity for public revenue the court may inquire as to the reasons underlying the request for examination and issuance of the subpoena. The language of the Supreme Court in *United States v. Powell, 379 U.S. 48, 58, 13 L.Ed.2d 112, 120, 85 S.Ct. 248, 255,* is

appropriate here: "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." In such hearing we believe, as the Supreme Court stated in *Powell,* that the burden is upon the taxpayer to show an abuse of the court's process. Accordingly, the judgment of the circuit court of Cook County enjoining defendant's further investigation of plaintiff's books and records for the period August 1, 1966, to July 31, 1969, is reversed.

Defendant contends that the trial court erred in dismissing its counterclaim on the ground that an injunction cannot be supported by allegations on mere information and belief, since the sole basis upon which defendant sought to enjoin plaintiff from doing business was plaintiff's admitted failure to file annual information returns as required by section 442 of the Act. (Ill.Rev.Stat. 1967, ch. 120, par. 442.) The procedure for dealing with violations of the Act is set out in section 441(b). (Ill.Rev.Stat. 1967, ch. 120, par. 441(b).) The first sentence of this section provides: "The Department may, after notice and a hearing as provided herein, revoke the certificate of registration of any person who violates any of the provisions of this Act." The last paragraph of section 441(b)(in 1967) provided: "The Department may, by application to any circuit court or to any judge thereof, obtain an injunction restraining any person who engages in the business of selling tangible personal property at retail in this State without a certificate of registration (either because his certificate of registration has been revoked or because of a failure to obtain a certificate of registration in the first instance) from engaging in such business until such person shall comply with this Act and qualify for and

obtain a certificate of registration. Upon refusal or neglect to obey the order of the court or judge, said court or judge may compel obedience thereof by proceedings for contempt."

Defendant's attempt to restrain plaintiff from engaging in business without a prior revocation of plaintiff's certificate of registration following notice and hearing was thus unauthorized by the Act and the order dismissing the counterclaim was therefore correct.

Finally, defendant contends that the trial court erred in denying defendant's motion for leave to file an amendment to its answer and countercomplaint made prior to signing of the final decree on May 5. The trial court has a broad discretion with respect to allowance of amendments to pleadings prior to the entry of final judgment, and the refusal to permit an amendment is not prejudicial error unless there has been a manifest abuse of such discretion. *(Old Salem Chautauqua Ass'n v. Assembly of God, 13 Ill.2d 258; Deasey v. City of Chicago, 412 Ill. 151.)* However, since defendant has failed to incorporate the proffered amendment into the record on appeal, we are unable to determine whether a manifest abuse of discretion was here present. *Lowrey v. Malkowski, 20 Ill.2d 280, 285.*

Since the trial court proceeded in a mistaken belief that the burden was upon the State to establish fraud by the taxpayer as a condition precedent to examination of the books for the previously audited period, we believe fundamental fairness to the State and taxpayer require remanding this cause to the trial court for further proceedings in accordance with this opinion. The judgment of the circuit court of Cook County is accordingly affirmed in part and reversed in part, and the cause is remanded with directions.

*Affirmed in part and reversed in part and remanded, with directions.*

MR. JUSTICE RYAN dissenting:

The majority opinion focuses upon the question of estoppel and the authority of the Department of Revenue to examine the books and records of Austin Liquor Mart, Inc. under the circumstances here present. It appears that the determination of this question is not necessary to the disposition of the case. We are here reviewing a trial that was had wherein certain issues were formed by the pleadings. The Department of Revenue made certain affirmative allegations in support of its assertion that it had a right to reexamine the books. It failed to present any evidence in support of its pleadings and the court properly ruled in favor of Austin Liquor Mart, Inc. The question we must decide is whether the decision of the trial court was against the manifest weight of the evidence. In my opinion it was not.

Supplementing the statement of facts in the majority opinion I point out that the petition filed on December 12, 1969, by the plaintiff alleged among other things that on November 25, 1969, it had been served with a *subpoena duces tecum* requiring the production of books and records before the Department of Revenue, herein referred to as defendant, and that no prior demand nor notice of a pending investigation had been given; that the attorney for the plaintiff appeared before the defendant and moved to quash the subpoena for certain defects therein; that no ruling was made on the motion to quash; that on December 2, 1969, plaintiff was served with another *subpoena duces tecum* again requiring the production of its books and records before the defendant; that again plaintiff's attorney moved to quash the subpoena; that on December 10, 1969, plaintiff's attorney received a letter from the defendant denying the motions to quash and stating that the two subpoenas would be considered as first and second demands for the books and records and then referred to section 7 of the Retailers' Occupation Tax Act (Ill.Rev.Stat. 1969, ch. 120, par. 446), which requires the

keeping of books and the right of the Department to inspect the same, and section 13 of that act (par. 452), which provides a penalty for certain violations; and that on the same day plaintiff's attorney again appeared at an office of the defendant and protested the implied threat to prefer criminal charges against the plaintiff by referring to section 13 (par. 452) in the letter. Attached to the complaint as exhibits were the transcripts of the discussion at the three appearances of the plaintiff's attorney before the officer of the defendant, the two *subpoenas duces tecum,* the letter from the defendant received by plaintiff's attorney on December 10, copies of previous notice of tax liability and of the check paying the same. The petition sought a mandatory injunction to enjoin the defendant from further investigating the plaintiff's books for the period of August 1, 1966, to July 31, 1969. (The period covered by the previous audit.)

The answer filed by the defendant, in addition to admitting and denying the allegations of the petition, by way of "further answer" alleged that the books and records forwarded to the defendant by the plaintiff in connection with the previous audit were "in fact incomplete and faulty and did not report the total amount of gross receipts" and alleged that if defendant were permitted to examine the complete set of books the same would show a deficiency of sales tax due for that period.

In addition to the answer the defendant filed a counterclaim in which it made the same allegations and in addition alleged that the plaintiff has "intentionally and knowingly misrepresented the gross receipts" for the sole purpose of evading taxes due the State and that such misrepresentation was an "intentional fraud" against the Department of Revenue. The defendant prayed that the court order plaintiff to submit all books and records for the period in question.

The plaintiff filed a reply to the answer and an answer to the counterclaim denying these allegations.

Although holding that payment of a prior assessment covering the same period is not a bar to subsequent investigation, the majority opinion concedes that a taxpayer is not to be left entirely to the mercy of the Department of Revenue for it states: "Even in areas where the need is as compelling as is the necessity for public revenue *the court may inquire as to the reasons underlying the request for examination and issuance of the subpoena.*" (Emphasis supplied.) In quoting from *United States v. Powell, 379 U.S. 48, 58, 13 L.Ed.2d 112, 120, 85 S.Ct. 248, 255,* the majority states: "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute or for any other purpose reflecting on the good faith of the particular investigation." Assuming, *arguendo*, the correctness of the criteria of the majority, I am of the opinion that the trial court correctly decided the issues.

The court had before it admitted allegations of the complaint concerning the prior assessment and payment, the two subpoenas and the letter from the defendant to the plaintiff's attorney referring to the criminal sanction section of the statute. At an early hearing on a motion, the court was informed of the fact that certain officers of the plaintiff had been arrested by agents of the defendant for failure to produce the books and records upon demand, and that this arrest had taken place just two days after the attorney for the plaintiff had appeared at the office of the defendant and objected to the implied threat of criminal sanctions contained in the letter which he had received. As against these facts the court had before it only the bare allegations of irregular conduct on the part of the plaintiff which the defendant made in both its answer and its counterclaim. In the colloquy between court and counsel at the hearing on the complaint and counterclaim, the court stated that it wanted to hear the evidence on the defendant's charge that the books and records which

plaintiff had forwarded to defendant were incomplete and faulty. The court informed counsel for the defendant that in the answer and counterclaim they had raised issues of fact which they had to support. The court on several occasions asked counsel for the defendant if there was any evidence to prove these allegations. When no evidence was presented, the court granted the plaintiff's prayer for injunctive relief and denied the prayer of defendant's counterclaim for an order on the plaintiff to produce the books and records.

Although the question of estoppel was mentioned by the court and argued by counsel for both the plaintiff and the defendant, the order entered by the court reflects that the decision was based not on the principal of estoppel but on the findings of the court on the issues created by the pleading. I think the court did "inquire as to the reasons underlying the request for examination" as the majority holds it may do. I think the admitted allegation of the complaint gave the court adequate reason for making such an inquiry. When defendant failed to produce any evidence to support the allegation as to why it wanted another examination of the plaintiff's books and records, the court properly held it was not entitled to such an examination. These were the issues that were tried and determined by the trial court. The issue was not a question of estoppel. I reiterate, the opinion of the court focuses on the question of law which is only indirectly involved in this case and not determinative of the issues.

Strengthening the above analysis is the provision of the statute (Ill.Rev.Stat. 1969, ch. 120, par. 443) which provides that the tax return as corrected by the Department "shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due, as shown therein." In this lengthy section of the Act the legislature repeated this premise several times. This court has held on many occasions that the amount of tax assessed by the Department is *prima facie* correct and that

the taxpayer contesting the assessment must overcome this *prima facie* case. Once he does, the burden shifts to the Department to prove its case by competent evidence. *(Walters and Company v. Department of Revenue (1969), 44 Ill.2d 95; Young v. Hulman (1968), 39 Ill.2d 219; Miller v. Department of Revenue (1951), 408 Ill. 574; Tatz v. Department of Finance (1945), 391 Ill. 131; Lutkus v. Department of Finance (1944), 385 Ill. 221; Novicki v. Department of Finance (1940), 373 Ill. 342.)* True, these cases all involved situations wherein the taxpayers were contesting assessments. However, the statute does not say that the assessment shall be *prima facie* evidence only against the taxpayer. Nor does it limit the use of the corrected assessment as *prima facie* proof to the Department. Clearly under the statute the *prima facie* correctness inures to the benefit of either party and will constitute *prima facie* proof of correctness on behalf of either the taxpayer or the Department of Revenue. Following the reasoning of the above cited cases, after the plaintiff had pleaded and the defendant had admitted the prior assessment this constituted *prima facie* proof of the correctness of the assessment and it was incumbent upon the Department of Revenue to come forward with some facts which would overcome this *prima facie* case. The defendant pleaded sufficient facts to overcome the *prima facie* case in both its answer and its counterclaim; however, it offered no proof to support these allegations. Accordingly the court correctly ruled in favor of the plaintiff and against the defendant.

For these reasons I would affirm the circuit court of Cook County.

SCHAEFER and KLUCZYNSKI, JJ., join in this dissent.