COMPTROLLER OF THE TREASURY, RETAIL
SALES TAX DIVISION *v.* ATLAS GENERAL
INDUSTRIES

[No. 231, September Term, 1963.]

78

*Decided March 9, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Russell R. Reno, Jr., Assistant Attorney General,* and *Edward F. Engelbert, Chief, Retail Sales Tax Division,* with whom was *Thomas B. Finan, Attorney General of Maryland,* on the brief, for the appellant.

*Walter C. Anderson* and *William W. Travers,* with whom were *Webb & Travers* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

After the trial judge reversed a decision of the Comptroller of the Treasury, denying a petition of the appellee protesting a sales tax assessment, he appealed.

Two questions are presented for decision: (1) does the failure of a vendor to secure, from the vendee, a certificate that a purchase is made for resale create an absolute liability on the part of the vendor to pay a sales tax, or does the statutory requirement of a resale certificate merely create a rebuttable presumption, which may be overcome by a showing that, in fact, the sale was for resale; and (2) under the facts of this case, is the Comptroller estopped from making a tax assessment based on the failure of appellee to secure resale certificates?

Marvil Package Company, a division of Atlas General Industries, the appellee, is engaged in the business of manufacturing baskets and crates used in the packaging of vegetables, chickens, seafood, and other food stuffs. During the period 1954 to 1961, appellee failed to collect retail sales taxes, or, in the alternative, to secure resale certificates from some of its customers upon the sale of various shipping containers.

Certain of the packaging sold by appellee was used by farmers and vegetable packers to hold tomatoes, cucumbers, chickens, oysters, and other food products for shipment to various markets. The farmers and packers who purchased these crates filled them with the various commodities mentioned above and then sold them at market. As indicated above, no resale certificates were secured by appellee from the farmers and packers

who purchased these containers, nor was any sales tax collected on these sales.

In 1954, auditors for the Retail Sales Tax Division conducted an audit of appellee's records at their Salisbury Warehouse Division and determined that a small amount of tax was due on certain retail sales of baskets. This assessment was levied and paid by appellee without protest. At that time, the auditors for the Retail Sales Tax Division did not challenge other sales wherein no resale certificates had been received. There is, however, nothing in the evidence to indicate that the auditor was ever concerned with this latter problem and there is no indication that the question of the failure of appellee to seek such resale certificates was ever discussed with the auditor or called to his attention.

As early as 1952, the Retail Sales Tax Division had sent out releases to various segments of the industry calling their attention to the provisions of the sales tax law and attendant regulations requiring that resale certificates be obtained in the event a sale was made to a purchaser for resale. On some occasions these releases were mailed to all taxpayers holding Retail Sales Tax Licenses. The testimony also indicates that the sales tax return forms used by appellee in 1954 and thereafter contained an instruction pointing out the necessity of obtaining resale certificates.

Subsequent to the audit in 1954, a new audit was made by the Retail Sales Tax Division in 1960 and at that time the lack of resale certificates was challenged and an assessment, originally far in excess of the amount presently in contention, was levied against the appellee. This assessment related to taxes alleged to be due on those sales to farmers and food packers where no resale certificates had been furnished. The appellant seems to concede that the purchases here involved were, in fact, for the purpose of resale.

Immediately following this assessment the Baltimore City Court (Prendergast, J.) on March 16, 1961, decided the case of *Bagby Furniture Company v. Comptroller* (reported in the Daily Record, May 10, 1961) in which it was determined that the requirement of resale certificates imposed by Section 333 of Article 81 of the Maryland Code was mandatory and that

the failure to secure such certificates rendered the transaction taxable. At the conclusion of his opinion, Judge Prendergast suggested that remedial legislation be enacted by the Maryland General Assembly to give the taxpayer a reasonable time after sales had occurred within which to obtain resale certificates. Within two weeks after the opinion was handed down, the Assembly, which was then in session, enacted as an emergency measure Chapter 736 of the Acts of 1961 (effective May 3, 1961) which added two new sections to Article 81, Sections 333A and 333B, giving persons who had failed to secure resale certificates a grace period of sixty days within which to secure the same, after they had been notified by the Comptroller of his intention to make an assessment. An additional provision in Chapter 736 provided that it should be given retroactive effect to include sales occurring before the effective date of the Act in those instances where the Comptroller had not levied an assessment, or, if he had levied an assessment, where the assessment was still subject to contest. Pursuant to this legislation, appellee secured resale certificates for the greater part of the sales involved in the original assessment, thereby reducing the same from far in excess of $100,000 to the amount now in question, to wit, $6,150.18. This reduced assessment relates to those sales where no resale certificates were in fact secured within the new 60-day grace period.

I

The appellee here argues that under Code (1957), Article 81, Section 333,[1] the failure to obtain resale certificates created

1. Section 333 provides:

"It shall be presumed that all receipts for the sale of tangible personal property and services mentioned in this subtitle are subject to tax until the contrary is established, and the burden of proving that a receipt is not taxable hereunder shall be upon the vendor or the purchaser as the case may be. Unless the vendor shall have taken from the purchaser a certificate signed by and bearing the name and address of the purchaser and the number of his registration certificate to the effect that the property or service was purchased for resale, the sale shall be deemed a taxable sale of [at] retail. The certificate herein required shall be in such form as the Comptroller shall, by regulation, prescribe and in

only a rebuttable presumption of liability on its part for the tax; and it has successfully rebutted the presumption. It also argues that even if Section 333 creates a conclusive presumption such presumption does not apply to the sales in question because they are excluded from the Sales Tax Act by definition in Code (1957), Article 81, Section 324 (f).[2]

The appellant counters, contending that Sections 324 (f), 333 and 333B must be construed together, and that, under a proper construction thereof, the admitted failure of appellee to secure resale certificates creates an absolute liability that it pay the sales tax. Obviously if appellant be correct in this contention, it is a complete answer to both of the appellee's arguments under this heading.

There can be little doubt, we think, that the statutes should be construed together. It will be noted that although Section 324 (f) excludes sales for resale from the definition of "retail

---

case no certificate is furnished or obtained prior to the time the same is consummated, the tax shall apply as if the sale were made at retail."

And we include Section 333B, as it will be referred to later.

"Notwithstanding the provisions of § 333, the Comptroller shall notify any vendor who has failed to obtain proper resale certificates of the Comptroller's intention to assess the tax because of the vendor's failure to have obtained proper resale certificates at the time when the sale was made. The vendor shall have a sixty-day period of grace from the date such notice is sent by the Comptroller to obtain proper resale certificates. The Comptroller's assessment of the tax on any sales for which proper certificates have not been obtained at the end of the sixty-day grace period shall be final."

2. In part, Section 324 (f) reads:

" 'Retail sale' and 'sale at retail' shall mean the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this subtitle. Said term shall mean all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be received by him, or to use or incorporate the property so transferred, as a material or part, of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining. For the purpose of the tax imposed by this subtitle, the term 'sale at retail' shall include but shall not be limited to the following * * *."

sale," Sections 333 and 333B set forth what a vendor must do to set on foot such an exclusion, and relieve him from the obligation imposed by Section 325 of collecting a sales tax from the purchaser. These latter sections provide that *all* receipts for the sale of tangible personal property shall be presumed to be subject to tax, with the burden of establishing the contrary on the vendor or purchaser, and unless the vendor shall have taken from the purchaser a certificate signed by the purchaser and bearing the number of his registration certificate to the effect that the property was purchased for resale, "the sale shall be deemed a taxable sale," and in case no certificate is furnished or obtained prior to the time the sale is consummated, "the tax shall apply as if the sale were made at retail." It is difficult to see how the Legislature could have used plainer or more precise language to express an intention that the tax applies, unless certificates of resale are obtained. It seems apparent that Section 333 was designed as an easy method of establishing that a purchase has been made for the purpose of resale, but, at the same time, when resale certificates are not obtained to avoid possibly protracted and tedious litigation in attempts to establish that purchases have, in fact, been made for the purpose of resale. We, therefore, hold that the trial court was in error when he found that the assessments made herein by the Comptroller were null and void.

The above conclusion is bolstered by the provisions of Section 333B. We pointed out above that the Legislature enacted this statute shortly after the decision of *Bagby, supra,* wherein the trial court had held that under the provisions of Section 333 an absolute liability on the part of the vendor to pay the tax arose upon its failure to procure resale certificates even if the purchases were, in fact, for resale. The Legislature expressed no disagreement with this conclusion, but on the contrary, after providing for a sixty-day grace period to obtain resale certificates, stated that if such certificates were not obtained, which is the situation in the case at bar, the Comptroller's assessment "shall be final." Again, we think the language of the statute is plain and unambiguous and the legislative intent clear.

There is nothing in the above interpretation of the statutes herein involved that conflicts with our decision in *Baltimore*

*Foundry and Machinery Corp. v. Comptroller,* 211 Md. 316, 127 A. 2d 368. We have construed the statutes as strongly in favor of the taxpayer as their terms will permit.

Our sister State of Ohio, with a statute very similar to ours, reached the same conclusion that we do. *Steubenville White Truck Sales & Service, Inc. v. Peck,* 122 N. E. 2d 790; *Bellows v. Bowers,* 165 Ohio St. 9, 133 N. E. 2d 131. Cf. *Faber Benson Sales Co. v. District of Columbia,* District of Columbia Tax Court, Docket No. 1442, Opinion No. 882, reported in Prentice Hall Sales Tax Service, D. C., 23,035 (1955). New York, with a statute markedly different from Maryland's, has held that its statute creates only a rebuttable presumption.

## II

The appellant also contends that the conduct of the Comptroller "amounted to misrepresentation and gives rise to the application of estoppel." More specifically, it states that the only reason assigned for the "delay" from 1954 until 1961 in demanding the payment of the tax or the production of resale certificates is the "previous Administration did not care to force the issue," but the present one does.

The State in collecting its taxes acts in a governmental, and not in a proprietary capacity. 51 Am. Jur., *Taxation,* § 966; *Henderson v. Gill,* 49 S. E. 2d 754 (N. C.) ; *Comm. v. Western Md. R. R. Co.,* 105 A. 2d 336 (Pa.). By our statute, Code (1963 Cum. Supp.), Article 81, Section 342 (a), the Comptroller is specifically granted authority to bring an action for failure to pay sales taxes at any time within six years from the time such taxes shall be due and payable.

It seems to be universally recognized that, generally, a State cannot be estopped by the acts and conduct of its officers or agents in the performance of the governmental function of collecting taxes legally due. The reason for the rule is obvious: no administrative officer is vested with the power to abrogate the statute law of the State, nor to grant to an individual an exemption from the general operation of the law. *United States v. Globe Indemnity Co.,* 94 F. 2d 576 (C.A. 2) ; *Olson Const. Co. v. State Tax Comm.,* 361 P. 2d 1112; *Henderson v. Gill, supra; Michigan Sportservice Inc. v. Nims,* 30 N. W. 2d 281

(Mich.) ; *Claiborne Sales Co. v. Collector of Revenue,* 99 So. 2d 345 (La.) ; *Comm. v. Western Md. R. R. Co., supra;* 31 C.J.S., *Estoppel,* § 138; 19 Am. Jur., *Estoppel,* § 166; Bigelow, *Estoppel* (6th ed.), p. 372; 1 *Cooley Taxation,* p. 159 Cf. *Gontrum v. City of Baltimore,* 182 Md. 370, 35 A. 2d 128.

In most of the cases cited above, the acts and the conduct of the officials were much more pronounced toward possibly establishing an estoppel than the conduct of the Comptroller and his subordinates in the case at bar; yet the Courts held that no estoppels were created against the States. For example, in *Claiborne Sales, supra,* the Supreme Court of Louisiana held that sales of ceramic tile and accessories to contractors constituted taxable sales at retail and were thus subject to tax and penalties, despite the fact that the Deputy Collector of Revenue had, on two separate occasions, refused to grant the taxpayer a dealer's registration certificate on the ground that such transactions were not within the taxing statute. A similar result was reached in *Michigan Sportservice, supra,* wherein the court ruled that sales of programs, score cards, and racing forms, which carried advertisements, were not exempt "commercial advertising" and therefore were subject to taxation, even though a departmental regulation, in effect at the time the sales were made, stated that such sales were exempt. The Michigan court stated:

> "* * * The provisions of the rule must, of course, be construed in connection with the statute itself. In case of conflict, the latter governs. It is not within the power of the department of revenue to extend the scope of the act * * *. For equally cogent reasons the rules and regulations of the department may not grant exemptions not authorized by the legislature."

See also *Henderson v. Gill, supra,* wherein the Court stated:

> "The case of plaintiffs has an appeal stronger than that which usually supports a plea of estoppel. The official representations made to them are now conceded to have been incorrect and misleading and be-

cause of the multitude of the transactions and want of any record of the purchasers they were thus deprived of the opportunity to collect the three per cent tax on sales made on products they were advised were exempt. Moreover, it must be noted that these plaintiff merchants were statutory agents for the collection of the tax on sales which were definitely imposed upon the consumer, and their responsibility arises on the assumption that they must so collect.

"These facts, however potent in creating an estoppel in ordinary transactions between individuals, do not estop the State in the exercise of a governmental or sovereign right.

\* \* \*

"The action here is against the State, by statutory permission, G.S. § 105-406. The imposition and collection of taxes are, of course, governmental functions; and the State cannot, by the conduct of its agents be estopped from collecting taxes lawfully imposed and remaining unpaid; and under the law as we understand it neither can their conduct or advice create an estoppel against the State by these retail merchants on the theory of their mere agency since they are the agent of the law, with a fixed liability to account for the tax imposed \* \* \*."

In *Olson, supra,* the Utah Court, likewise, stated:

"This court, while recognizing the possibility that one might be penalized by reliance upon an invalid administrative regulation, has held that an administrative interpretation out of harmony and contrary to the express provisions of a statute cannot be given weight and, to do so, would in effect amend that statute."

We hold that the State is not estopped from asserting its claim for the payment of the taxes herein involved, and, as the

action was brought within the time prescribed by statute, the judgment must be reversed.

> *Judgment reversed, with costs; cause remanded for the entry of judgment in accordance with this opinion.*