*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-TX-0088

DISTRICT HOSPITAL PARTNERS, LP, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CVT-000013)

(Hon. John F. McCabe, Trial Judge)

(Argued January 19, 2023                    Decided March 2, 2023)

*Kelley C. Miller* for appellant.

*Nitisha Baronia*, Assistant Attorney General, for appellee. *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges.*

MCLEESE, *Associate Judge*: Appellant District Hospital Partners, LP, doing business as The George Washington University Hospital (GWUH), sought a refund of sales taxes. The Superior Court held that GWUH was not entitled to a refund. We affirm.

## I. Background

Retail vendors in the District of Columbia are generally required to pay a sales tax in connection with sales of tangible personal property. D.C. Code § 47-2002(a). The vendor is required to collect the tax from the purchaser, who is required to reimburse the vendor for the tax. D.C. Code § 47-2003(a). The sales tax does not apply, however, to sales of personal property that the purchaser intends to resell. D.C. Code § 47-2001(n)(1).

The D.C. Code specifies the procedure for claiming that a sale is exempt from the sales tax because the purchaser intends to resell the property at issue:

> It shall be presumed that all receipts from the sale of tangible personal property and services mentioned in this chapter are subject to tax until the contrary is established, and the burden of proving that a receipt is not taxable hereunder shall be upon the vendor or the purchaser as the case may be. . . . [U]nless the vendor shall have taken from the purchaser a certificate signed by and bearing the name and address of the purchaser and the number of his registration certificate to the effect that the property or service was purchased for resale . . . , the receipts from all sales shall be deemed taxable. . . . [I]n case no certificate is furnished or obtained prior to the time the sale is consummated, the tax shall apply to the gross receipts therefrom as if the sale were made at retail.

D.C. Code § 47-2010.

Except as indicated, the following facts appear to be undisputed. The present case involves certain purchases made by GWUH from 2016 to 2019. GWUH paid nearly $1,000,000 in sales taxes on the purchases. GWUH claims that the sales taxes were paid in error because GWUH purchased prepared meals that were then resold. At the time of the purchases, GWUH did not provide the seller with a certificate stating that the purchases were for resale.

GWUH filed a claim for a refund of the sales tax. *See* D.C. Code § 47-2020(a) ("Any tax that has been erroneously or illegally collected shall be refunded if application under oath is filed with the Mayor for such refund within 3 years from the payment thereof."). The Office of Tax and Revenue (OTR) denied the claim for a refund on the ground that GWUH had not provided the seller with a resale certificate at the time of the purchases, as required by D.C. Code § 47-2010. GWUH appealed that ruling to the Superior Court, which upheld OTR's decision.

4

## II. Analysis

This case turns on the interpretation of provisions of the D.C. Code. We generally decide issues of statutory interpretation de novo. *E.g.*, *Briscoe v. United States*, 181 A.3d 651, 655 (D.C. 2018). In some circumstances, however, we give deference to an expert agency's interpretation of ambiguous statutes that the agency administers. *E.g.*, *D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels. Bd.*, 282 A.3d 598, 603 (D.C. 2022). *See generally, e.g., D.C. Off. of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.*, 56 A.3d 477, 480-81 (D.C. 2012) (discussing question whether court owed deference to OTR's interpretation of tax statute). The parties take the position that our review in this case is de novo.

The last two sentences of D.C. Code § 47-2010 by their plain terms foreclose GWUH's claim for a refund. Specifically, those sentences specify a clear procedure for purchasers who wish to avoid sales tax on the ground that the purchaser intends to resell the purchased items: at the time of the purchase, the purchaser must provide the vendor with a certificate stating that the purchased items are intended for resale. D.C. Code § 47-2010. Those sentences also impose a clear consequence for failing to follow the specified procedure: the purchases at issue "shall be deemed taxable . . .

[and] the [sales] tax shall apply to the gross receipts therefrom as if the sale were made at retail." *Id.*

Our interpretation of the plain language of § 47-2010 finds strong support from a decision of the Court of Appeals of Maryland interpreting a statute worded almost identically to § 47-2010. *Comptroller of Treasury, Retail Sales Tax Div. v. Atlas Gen. Indus.*, 198 A.2d 86, 89 (Md. 1964) (interpreting Md. Code art. 81, § 333 (1957)) ("It is difficult to see how the Legislature could have used plainer or more precise language to express an intention that the [sales] tax applies, unless certificates of resale are obtained.").

We do not, however, construe statutory terms in isolation. *See, e.g.*, *United States v. Hawkins*, 261 A.3d 914, 917 (D.C. 2021) (Statutory interpretation is "a holistic endeavor, in which we look not at words in isolation but at their placement and purpose in the statutory scheme.") (brackets, ellipses, and internal quotation marks omitted). Relying on a number of considerations, GWUH argues that a purchaser who fails to provide the required certificate and instead pays sales tax at the time of a purchase can nevertheless later obtain a refund by proving that the purchased items were intended for resale and in fact were resold. We are not persuaded by GWUH's arguments.

First, GWUH argues that interpreting the last two sentences of § 47-2010 to flatly foreclose refunds to purchasers who fail to provide the required certificate at the time of purchase would make the first sentence of § 47-2010 superfluous. As previously noted, the first sentence of § 47-2010 provides that

> [i]t shall be presumed that all receipts from the sale of tangible personal property and services mentioned in this chapter are subject to tax until the contrary is established, and the burden of proving that a receipt is not taxable hereunder shall be upon the vendor or the purchaser as the case may be.

Contrary to GWUH's contention, the first sentence of § 47-2010 is not superfluous when the last two sentences of § 47-2010 are read to flatly foreclose refunds to purchasers who fail to provide the required certificate at the time of purchase. For example, in some cases, a purchaser will provide a certificate stating that the purchaser intends to resell the purchased items, but OTR will later take the position that in fact the purchased items were not intended for resale or were not resold. The first sentence of § 47-2010 provides guidance about how such disputes are to be resolved: there is a presumption that the purchase is taxable, and the party seeking to argue otherwise bears the burden of proving otherwise.

Second, GWUH appears to argue that the first sentence of § 47-2010 creates a general rebuttable presumption of taxability that should prevail over the last two sentences of § 47-2010. We disagree. Reading the general rebuttable presumption in the first sentence of § 47-2010 to completely nullify the more specific flat rule stated in the last two sentences of § 47-2010 would run contrary to two well-settled principles of statutory interpretation: (1) the principle that "statute[s] should be construed so that general language does not apply to matters covered by more specific language," *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 531 A.2d 274, 279 (D.C. 1987); *see also, e.g.*, *Bloate v. United States*, 559 U.S. 196, 208 (2010) ("[G]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.") (internal quotation marks omitted); and (2) the principle that "each provision of the statute should be construed so as to give effect to all of its provisions, not rendering any provision superfluous," *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 183 (D.C. 2021) (brackets and internal quotation marks omitted).

Third, GWUH relies on D.C. Code § 47-2020(a), which provides that "[a]ny tax that has been erroneously or illegally collected shall be refunded . . . ." Essentially for the reasons just stated, however, we do not agree that this general

language negates the more specific flat rule stated in the last two sentences of § 47-2010. Moreover, in light of the flat rule stated in § 47-2010, sales taxes collected from a purchaser who fails to present the required certificate are simply not "erroneously or illegally collected."

Fourth, GWUH argues that § 47-2020 is a remedial statute that should be construed broadly in favor of taxpayers seeking refunds. GWUH does not, however, cite authority specifically holding that tax-refund provisions should be construed liberally in favor of taxpayers. To the contrary, we have held that tax statutes should generally "be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve." *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 631 (D.C. 2015) (internal quotation marks omitted). "Only if the statute remains ambiguous after resorting to all of the normal tools of statutory construction should the [c]ourt construe any remaining reasonable ambiguity against the District and in favor of the taxpayer[]." *Id.* (internal quotation marks omitted). We see no such ambiguity here.

Fifth, GWUH cites D.C. Code § 47-2020(c), which permits taxpayers seeking refunds to introduce evidence in support of their refund requests. That provision

applies to tax refunds in general, however, and does not provide a basis upon which to supersede § 47-2010's flat rule that no refund of sales tax is available to a purchaser who fails to provide a certificate to the vendor at the time of purchase.

Sixth, GWUH relies on 9 D.C.M.R. § 414, which governs sales tax on purchases for resale. In our view, that regulation is consistent with § 47-2010's flat rule that no refund of sales tax is available to a purchaser who fails to provide a certificate to the vendor at the time of purchase. For example, 9 D.C.M.R. § 414.11, which GWUH specifically cites, addresses the situation in which a certificate is provided at the time of sale but the property is then given away. *Id.* Another provision, 9 D.C.M.R. § 414.1, addresses who bears the burden of proof if an issue later arises about whether a purchase was for resale, providing that the vendor bears the burden of proof unless the vendor "timely takes in good faith" the required certificate. *Id.* That provision does not expressly contradict § 47-2010's flat rule. It is true, however, that § 414.1, considered in isolation, could at least arguably be read to imply that a purchaser who did not provide a certificate at the time of purchase could nevertheless establish an exemption from the sales tax if the purchaser could carry the burden of showing that the purchase was for resale. We decline to interpret the regulation in that fashion, however, because an arguable implication of a regulation cannot prevail over the plain language of a statute. *See,*

*e.g.*, *Riley v. Dep't of Emp. Servs.*, 258 A.3d 834, 846 (D.C. 2021) ("[E]xpress, mandatory [statutory] language overrides any regulation inconsistent with it.").

Seventh, GWUH relies on the principle that "courts deal with the substance, rather than the form, of transactions." *D.C. Off. of Tax & Revenue v. Shuman*, 82 A.3d 58, 68 (D.C. 2013) (internal quotation marks omitted). That is a well-settled principle in interpreting tax laws. *See, e.g.*, *Mazzei v. Comm'r of Internal Revenue*, 998 F.3d 1041, 1054 (9th Cir. 2021). "But like any background maxim that informs the construction and application of a statute, the doctrine of substance over form can be negated by . . . express statutory language." *Id.* "Thus, there are some circumstances when form—and form alone—determines the tax consequences of a transaction, such as when statutory provisions deliberately elevate, or have been construed to elevate, form above substance." *Id.* at 1055 (citations and internal quotation marks omitted). We conclude that the last two sentences of § 47-2010 deliberately and explicitly make what could be viewed as a matter of form—the failure to provide a certificate at the time of purchase—dispositive of whether sales tax must be paid.

Eighth, GWUH argues that treating § 47-2010 as establishing a flat rule results in "double taxation" of GWUH. We disagree with that characterization of

the events in this case. Because GWUH did not provide a timely resale certificate, GWUH was required to pay sales tax to its vendor, which was then required to pay the tax to the District of Columbia. *See* D.C. Code §§ 47-2002(a), -2003(a), -2010. We assume for current purposes the truth of GWUH's claim that GWUH resold the prepared meals. Presumably, GWUH therefore collected sales tax from the purchasers of the prepared meals and paid those collected taxes to the District. *Id.* In practical terms, GWUH thus bore the ultimate burden of paying sales tax only once. More accurately described, GWUH's objection is that GWUH was required to bear the burden of sales taxes that GWUH should not have been required to pay, because only the ultimate consumers of the meals should have been required to pay those sales taxes. That consequence, however, is entirely attributable to GWUH's failure to follow the required procedures.

Ninth, GWUH argues that it is "absurd" to require GWUH to pay sales taxes on transactions that in reality should have been exempt from sales taxes. To the contrary, we do not view it as at all absurd for the legislature to determine that any claim of exemption from sales tax must be supported by certificates presented to the vendor at the time of purchase. Requiring a contemporaneous resale certificate appears to us to be a reasonable approach to the problem potentially presented by trying to verify the purpose of numerous transactions entirely after the fact. *See*

*Comptroller of Treasury*, 198 A.2d at 83 ("It seems apparent that [a virtually identical provision of Maryland law] was designed as an easy method of establishing that a purchase has been made for the purpose of resale, but, at the same time, when resale certificates are not obtained to avoid possibly protracted and tedious litigation in attempts to establish that purchases have, in fact, been made for the purpose of resale."); *cf. Scholastic Servs. Org., Inc. v. Commonwealth*, 721 A.2d 74, 78 (Pa. Commw. Ct. 1998) ("By ignoring the requirement of initially demanding and receiving a valid complete [sales-tax] exemption certificate, this Court would not only eliminate the uniformity of the sales tax collection process but also unnecessarily burden the Department by forcing it to examine each claimed exemption on a case-by-case basis . . . .").

Tenth, GWUH cites two non-binding decisions, *District Paving Corp. v. District of Columbia*, No. 7268-97 (D.C. Super. Ct. Aug. 9, 2000), and *Steelcase, Inc. v. Dir., Div. of Tax'n*, 13 N.J. Tax 182 (Tax Ct. 1993). We do not view those decisions as supporting GWUH's argument. The decision in *District Paving* rests on a conclusion that the type of sale at issue there (purchase of utility power) was exempted from sales tax under D.C. Code § 47-2005(11) (1997), a provision separate from the "resale" exemption. *District Paving*, No. 7268-97, slip op. at 5, 25-26 ("This Court concludes only that if a taxpayer whose purchases of utility

power are statutorily exempt demands a refund, such refund cannot be denied on the basis of lack of presentation of an exemption certificate or 'resale' certificate at the time of the prior purchase."). The decision in *Steelcase* involves a statute worded quite differently from § 47-2010, with the most notable difference being that the New Jersey statute did not expressly require that a resale certificate be "furnished or obtained prior to the time the sale is consummated." D.C. Code § 47-2010; *see* N.J. Stat. Ann. § 54:32B-12(b).

Finally, GWUH states in passing that interpreting § 47-2010 as a flat rule is error "as a matter of law on due process grounds." GWUH neither cites authority nor provides argument in support of a separate constitutional claim. We therefore need not address such a claim. *See, e.g.*, *Miller v. United States*, 209 A.3d 75, 80 (D.C. 2019) (declining to address issue not adequately briefed on appeal). In any event, essentially for the reasons we have already stated, we see no basis for a conclusion that § 47-2010's flat rule offends the Due Process Clause.

In sum, we conclude that § 47-2010 precludes GWUH's claim for a refund, because GWUH failed to provide the vendor with a resale certificate at the time of the purchases at issue. We therefore affirm the judgment of the Superior Court.

*So ordered.*